IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

J.L.E.,[1]

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

Civil No. 24-10096 (RMB)

**OPINION**

**APPEARANCES**

Samuel Fishman
Chermol & Fishman, LLC
11450 Bustleton Avenue
Philadelphia, PA 19116

    *On behalf of Plaintiff*

Catherine Elisabeth Hamilton
Social Security Administration
Office of Program Litigation
6401 Security Boulevard
Baltimore, MD 21235

Lee Kouvousis
Social Security Administration
Law & Policy, Program Litigation 3
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant*

---

[1] Due to the significant privacy concerns in Social Security cases, any non-governmental party will be identified and referenced solely by initials in opinions issued in Social Security cases in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon an appeal filed by J.L.E. ("Plaintiff") seeking judicial review of the final determination of the Commissioner of the Social Security Administration (the "Commissioner" and the "SSA," respectively), which denied his application for Supplemental Security Income ("SSI") benefits. For the reasons set forth herein, the Court **AFFIRMS** the decision of the Administrative Law Judge (the "ALJ").

## I.    PROCEDURAL HISTORY

On March 16, 2021, Plaintiff filed an application for SSI benefits under the Social Security Act (the "Act"), alleging an onset date of disability beginning March 1, 2017. [R. at 12.] The claim was first denied on October 29, 2021, and denied again upon reconsideration on July 15, 2022. [*Id.*] Plaintiff then filed a timely written request for a hearing before an ALJ. [*Id.*] That hearing took place on September 27, 2023, where Plaintiff was represented by an attorney and testified before the ALJ. [*Id.* at 12, 39–53.] The ALJ also heard testimony from vocational expert ("VE") Marian Marracco. [*Id.* at 53–57.] The ALJ issued her decision on November 29, 2023, finding that Plaintiff was not disabled under the Act. *See infra* at III.B. On December 15, 2023, the Appeals Council denied Plaintiff's renewed request for review, rendering the ALJ's decision final. [R. at 1–5.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, a court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). This Court's review of the legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states that:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i–v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

3

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 2021–02 (3rd Cir. 2019) (alterations in original).

## III.    FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff submitted his application at the age of forty-seven. [R. at 29.] By the time of the ALJ's decision, Plaintiff became statutorily defined as closely approaching advanced age. [*Id.* (citing 20 C.F.R. § 416.963).]

**A. Plaintiff's Educational, Work, and Medical History**

Plaintiff completed a General Educational Development program in 2021 and previously worked as a carpet installer. [*Id.* at 29, 40, 239.] Plaintiff suffers the following physical impairments: cataract, chronic obstructive pulmonary disease ("COPD"), diabetes, diabetic neuropathy, obesity, anxiety disorder; pancreatitis, knee pain, carpel tunnel syndrome, low back pain, hepatic steatosis, substance abuse disorder, hypertension, and hyperlipidemia. [*Id.* at 14–15.]

**B. The ALJ's Decision**

The ALJ found that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 16, 2021, the application date. [*Id.* at 14.]

At step two, the ALJ found that Plaintiff's following physical impairments medically determinable and severe: cataract, COPD, diabetes, diabetic neuropathy, obesity, and anxiety disorder. [*Id.* at 14–15.] Contrariwise, the ALJ determined that Plaintiff's pancreatitis, knee pain, carpel tunnel syndrome, low back pain, hepatic steatosis, substance abuse disorder, hypertension, and hyperlipidemia were not severe. [*Id.* at 15–18.]

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. [*Id.* at 18–21.] As for Plaintiff's mental impairments, the ALJ found the following: mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. [*Id.* at 19–20.]

At step four, the ALJ found that Plaintiff has the RFC:

to perform light work as defined in 20 CFR [§] 416.967(b) except that he can have no concentrated exposure to extreme cold and heat or humidity, dust, odors, fumes, or other pulmonary irritants, or hazards such as heights and moving machinery.  No driving a motor vehicle.  He can perform simple, routine and repetitive tasks.  He can have no public contact and occasional contact with supervisors and co-workers.

[*Id.* at 21–29.]  The ALJ further found that Plaintiff could not perform any past relevant work experience.  [*Id.* at 29.]

At step five, the ALJ concluded that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC.  [*Id.*]  Crediting the VE's testimony, the ALJ found that Plaintiff would be able to perform the requirements of representative occupations such as a garment sorter, dispatcher-router, or warehouse checker.  [*Id.* at 29–30, 53–57.]  Accordingly, the ALJ concluded that Plaintiff was not disabled.

## IV.    DISCUSSION

Plaintiff raises three arguments in support of remand. First, he argues that the ALJ erroneously formulated his RFC at step four by failing to consider his mild limitation in adapting or managing oneself and moderate limitation in concentrating, persisting, or maintaining pace. [Docket No. 7 at 3–9 ("Pl.'s Br.").]  Second, he argues that the ALJ failed to consider his mild limitation in adapting or managing oneself in light of the ALJ crediting consultive examiner Dr. Courtney Ray's conclusion that he "would likely have mild to moderate difficulties adapting to normal home and work stressors".  [*Id.* at 9–11.]  Third, Plaintiff posits that the RFC demonstrates "glaring functional omissions" and that he cannot perform the representative occupations determined by the ALJ at step five.  [*Id.* at 11–18.]

A.    **Plaintiff's Mild Limitation in Adapting or Managing Oneself and Moderate Limitation in Concentrating, Persisting, or Maintaining Pace**

Plaintiff argues that the ALJ's step-four RFC analysis is deficient because it did not account for his mild limitation in adapting or managing oneself and moderate limitation in concentrating, persisting, or maintaining pace.  [Pl.'s Br. at 3–9.]  Pursuant to *Hess*, the Commissioner retorts that the ALJ sufficiently provided a "valid explanation" in fashioning the RFC's "simple, routine and repetitive tasks" limitation ("'simple-tasks' limitation") to address Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace. [Docket No. at 12–14 ("Comm'r's Opp. Br.").]  As for Plaintiff's mild limitation in adapting or managing oneself, the Commissioner argues that the ALJ did not have to account for it at all because it is only a mild limitation, and that, assuming otherwise, the ALJ's RFC determination on this issue is supported by substantial evidence.  [*Id.* at 14–16.]

1.    *Plaintiff's Moderate Limitation in Concentrating, Persisting, or Maintaining Pace*

Preliminarily, the Court agrees with the Commissioner that *Hess* governs whether the RFC's "simple-task" limitation sufficiently addresses Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace.  In *Hess*, the Third Circuit opined that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'"  931 F.3d at 211.  This first issue before the Court therefore "falls squarely within the ambit of" *Hess*.[2]

*See Stacey S. v. Comm'r of Soc. Sec.*, No. 1:21-CV-20433-NLH, 2022 WL 16834673, *5–*6

---

[2] The Court disagrees with Plaintiff that the application of *Hess* is inconsistent with *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004).  [Docket No. at 6–7 ("Pl.'s Reply Br.").]  The *Hess* court made sure to acknowledge that the "valid explanation" framework "flows directly from our decision in *Ramirez*."  *Hess*, 931 F.3d at 211.

(D.N.J. Nov. 8, 2022) (applying *Hess* to review whether RFC's "simple-tasks" limitation sufficiently accounted for plaintiff's moderate limitations in understanding, remembering or applying information and concentrating, persisting or maintaining pace).

To the ALJ's opinion we turn.  To start, the ALJ prefatorily declared that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis."  [R. at 21]; *see also* [*id.* at 24 (emphasis added) ("In determining the claimant's work-related functional capacity at this step, the undersigned has evaluated both his impairment-caused physical and *mental* limitations, as well as the extent of the restrictions that these limitations place on his work-related abilities."), 27 (emphasis added) ("The unde[r]signed assigned *mental* limitations in his residual functional capacity as assigned to consider the conclusions in Finding 3 above.").] The ALJ additionally clarified that Plaintiff's work-related abilities "include not only physical maneuvers such as lifting and walking, but also *mental* tasks such as *concentrating* and carrying out verbal and/or written instructions appropriately and in a timely manner."  [*Id.* at 24 (emphasis added).]

As will be established below, these statements reflect the ALJ's consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence ....[,] the medical opinion(s)[,] and prior administrative finding(s)".  [*Id.*]; *see Stacey S.*, 2022 WL 16834673, *6 (internal quotation mark and citation omitted) (rejecting plaintiff's argument that ALJ failed to make enumerated findings or adequately conduct a function-by-function analysis because "the ALJ explicitly noted that he considered all symptoms and the extent to which these symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence… [and] the medical opinions and prior administrative medical findings.").

The ALJ then proceeded to evaluate the objective medical evidence.  First, the ALJ noted that Plaintiff "underwent no significant mental health treatment during the period at issue aside from the treatment discussed above" and "was taking no mental medications until January 17, 2023, when he started treatment with Vistaril for his anxiety".  [R. at 26]; *see also* [*id.* at 24 ("He had undergone no significant mental health treatment.  He had never been psychiatrically hospitalized."), 27 ("The medical record suggests that he stabilized with medication and talk therapy between October 2022 and the present ….").]  The ALJ arrived at this conclusion by finding Plaintiff's "subjective complaints to Dr. Ray's consultative examination to be not persuasive."  [*Id.* at 27]; *see Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) ("In addition, Phillips' conservative treatment history supports the ALJ's determination that Phillips' subjective complaints of pain were not entitled to full credence."); *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 495 (D.N.J. 2022) (internal citation omitted) ("Although ALJs must consider claimants' subjective complaints, they are not obligated to credit them.").  From this, the ALJ ultimately concluded that Plaintiff's mental impairments "must be evaluated from the perspective of an undertreated patient for a portion of the period at issue, who had not shown to be refractory to treatment."  [R. at 27.]

The ALJ also considered evidence from examining physicians and psychologists.  For instance, the ALJ noted that Plaintiff "was pleasant and cooperative", "casually dressed and groomed", "could complete simple mathematical calculations", and that his "concentration was intact" during Dr. Christopher Williamson's consultative examination.  [*Id.* at 24 (citing *id.* at 662)]; *see Stacey S.*, 2022 WL 16834673, *6 (finding ALJ's references to "intact

comprehension" and "cooperative behavior … and appropriate or good mood and affect" as supporting a "valid explanation" for "simple tasks" limitation under *Hess*). The ALJ also referenced Dr. Courtney Ray's observation that Plaintiff's "mental state examination was normal", [R. at 27 (citing *id.* at 298)], and Dr. Jackie Rounds's view that his "memory was normal and he had good insight and judgment", [*id.* at 24 (citing *id.* at 903)]. And the ALJ found persuasive Dr. Ray's opinion that Plaintiff "had little difficulty comprehending and carrying out simple directions or complex instructions …." [*Id.* at 28 (citing *id.* at 299).]

While Plaintiff's request for "a neat organization of the analysis around each function is preferable, failure by an ALJ to do so is not reversible error where the ALJ explains her RFC findings and those findings are supported by substantial evidence." *Stacey S.*, 2022 WL 16834673, *7 (collecting cases). Talismanic phrasing or a "magic set of words or order of analysis" is not required. *Id.* at *6 (citing *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004)); *see also Lorie H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-13192-NLH, 2022 WL 2803168, at *6 (D.N.J. July 18, 2022) ("[A]n ALJ does not need to use particular language or adhere to a particular format in conducting her RFC analysis.").

The Court is satisfied that the analysis above "constitutes a sufficiently 'valid explanation' to support the ALJ's determination that Plaintiff, despite his mental limitations, was capable of performing [simple] unskilled work." *Dionisio R. v. Comm'r of Soc. Sec.*, No. CV 23-22067, 2025 WL 428557, at *4 (D.N.J. Feb. 7, 2025); *see Ramos v. Comm'r of Soc. Sec.*, No. CV 18-14155 (KM), 2019 WL 7288889, at *9 (D.N.J. Dec. 30, 2019) ("Moreover, this Circuit has regularly found that a RFC limiting claimant to simple, unskilled work is adequate to account for moderate limitations in concentration, persistence, and pace.") (collecting cases); *Daniel M. v. Comm'r of Soc. Sec.*, No. 21-10533, 2022 WL 2952912, *4–*5 (D.N.J. July

10

26, 2022) (finding "valid explanation" where ALJ considered "treatment evidence" and a "mental status examination"); *cf. Vargas v. Acting Comm'r of Soc. Sec.*, No. 21-19077, 2022 WL 17887225, at *5 (D.N.J. Dec. 23, 2022) (finding no "valid explanation" where ALJ "provided only one broad, single-sentence explanation"). Remand is therefore not appropriate.

### 2. *Plaintiff's Mild Limitation in Adapting or Managing Oneself*

Plaintiff argues next that the RCF is deficient because the ALJ did not account for his mild limitation in adapting or managing oneself. [Pl.'s Br. at 7–9.] The Court will reject the Commissioner's initial point that the ALJ was not required to address this limitation because it was only found to be mild. [Comm'r's Opp. Br. at 14–15.] "Courts in this circuit have 'consistently held that even mild limitations in the relevant domains of mental functioning must be included in an RFC assessment and hypothetical question posed to the VE that the ALJ relies upon.'" *Lesko v. Comm'r, Soc. Sec. Admin.*, No. 2:24-CV-01660-CBB, 2025 WL 3677017, at *7 (W.D. Pa. Dec. 18, 2025) (collecting cases); *see also* 20 C.F.R. § 404.1545(a)(2); SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

In any event, Plaintiff's contention is belied by the ALJ's exhaustive consideration of his mental health impairments. While recognizing Plaintiff's "problems with stress", the ALJ noted that he did not have similar issues with "changes in routine." [R. at 20 (citing *id.* at 266).] The ALJ further found "no evidence that the claimant appeared to be malodorous, unkempt or disheveled during the period at issue." [*Id.* (citing *id.* at 662 ("He was casually dressed and groomed, appearing his stated age. He was pleasant and cooperative throughout."))]; *see* [Pl.'s Br. at 12 (internal citation omitted) ("maintaining personal hygiene and attire appropriate to a work setting" exemplifies adapting or managing oneself).] Plaintiff

could also "manage his safety needs and could control his emotional state in public", according to the ALJ. [R. at 20.] In addition to the "simple tasks" limitation, the ALJ limited Plaintiff's RFC further so that he "can have no public contact and occasional contact with supervisors and co-workers" ("'contact' limitation"). [*Id.* at 21.] For these reasons, as well as all those discussed above, a "valid explanation" supports the ALJ's RFC determination with respect to Plaintiff's mental impairments. *See, e.g.*, *J.M. v. Comm'r of Soc. Sec.*, No. CV 24-8438 (ZNQ), 2025 WL 3312259, at *8 (D.N.J. Nov. 28, 2025) (finding that ALJ provided "valid explanation" for "simple tasks" limitation in light of plaintiff's moderate limitations in understanding, remembering or applying information, concentrating, persisting, or maintaining pace, and in adapting or managing oneself). Consequently, the ALJ's findings are supported by substantial evidence set forth in the record and there exists no factual or legal basis to disturb the same.

### B.    Dr. Courtney Ray's Medical Opinion

Plaintiff's second argument is a repackaging of the first. The ALJ found Dr. Courtney Ray's following conclusion "to be persuasive as it is consistent with the other medical evidence of record for the reasons noted above": Plaintiff "would likely have mild to moderate difficulties adapting to normal home and work stressors". [R. at 28.] Despite crediting this conclusion, Plaintiff claims the ALJ "failed to adopt any limitations on [his] ability to adapt and manage himself or even concentrate, persist, and maintain pace." [Pl.'s Br. at 10.]

As reviewed above, the ALJ wholistically examined and weighed Dr. Ray's conclusion with the other objective medical evidence with respect to Plaintiff's mental impairments in arriving at the RFC's "simple tasks" and "contact" limitations. "[T]his argument is essentially a request by Plaintiff for the Court to re-weigh the evidence in his

12

favor, something the Court may not do." *J.M.*, 2025 WL 3312259, at *7 (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)) ("[C]ourts are not permitted to re-weigh the evidence or impose their own factual determinations."). As such, the ALJ did not reversibly error in her treatment of Dr. Ray's opinion and remand is therefore not warranted under the circumstances.[3]

## C.    Plaintiff's Cataract and Representative Occupations

Lastly, Plaintiff argues that the ALJ's RFC "presents glaring omissions" and "demonstrates an obvious failure to consider critical Agency policy" in light of his cataract physical impairment. [Pl.'s Br. at 11–18.] At step two, the ALJ found Plaintiff's cataract to be a severe physical impairment, which, after considering the objective medical evidence, the ALJ "assigned environmental limitations and a limitation from driving": Plaintiff "can have no concentrated exposure to … hazards such as heights and moving machinery. No driving a motor vehicle." [R. at 21, 26.] Plaintiff contests that the medical evidence "clearly necessitate[d] the inclusion, or at the very least, the consideration of the limitations described in SSR 96-9p, including a limitation to seeing small objects."[4] [Pl.'s Br. at 13.] "Nonetheless," Plaintiff contends, "the ALJ failed to question the VE regarding job erosion or to consider the issue in the decision, which she was required to do." [*Id.*]

---

[3] For this reason, the Court declines to address the Commissioner's alternative arguments as to Dr. Ray's apparent vagueness and lack of vocational specificity. [Comm'r's Opp. Br. at 18.]

[4] As to visual limitations or restrictions, SSR 96-9p reads: "Most sedentary unskilled occupations require working with small objects. If a visual limitation prevents an individual from seeing the small objects involved in most sedentary unskilled work, or if an individual is not able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles, there will be a significant erosion of the sedentary occupational base. These cases may require the use of vocational resources." SSR 96–9p, 1996 WL 374185, at *8 (July 2, 1996).

Plaintiff's reliance on SSR 96–9P is misplaced. SSR 96–9P applies to an "'unskilled *sedentary* occupational base,' where[as] Plaintiff was determined to be capable of performing 'light work.' Therefore, SSR 96–9P does not apply."[5] *Virden v. Astrue*, No. Civ 11-3926 RBK, 2012 WL 3018254, at *11 (D.N.J. July 24, 2012) (internal citations omitted); [R. at 21]; *see Edwin J. v. Comm'r of Soc. Sec.*, No. CV 24-9362 (RK), 2025 WL 2506278 , at *7 n.10 (D.N.J. Sept. 2, 2025) (emphasis in original) ("Plaintiff also contends that the ALJ's decision contravened two Social Security regulations, though both are inapplicable here. *First*, Plaintiff avers that Judge Shelton failed to account for pushing, pulling, and manipulative limitations, as required by SSR 96-9p, but this regulation is only about unskilled sedentary jobs, not light work jobs."); *Barker v. Colvin*, No. 1:15-CV-574, 2016 WL 4408997, at *9 (M.D. Pa. July 27, 2016) ("Here, we find that SSR 96-9p is inapplicable because the ALJ limited Mr. Barker to the performance of light, rather than sedentary, work."), *R & R adopted*, No. 1:15-CV-574, 2016 WL 4366952 (M.D. Pa. Aug. 16, 2016).

Plaintiff also argues that he cannot perform the three occupations testified to by the VE—garment sorter, dispatcher – router, and warehouse checker—because each requires "Near Acuity", or the "ability to use near-vision". [Pl.'s Br. at 15.] "Because there was no evidence that [his] vision problems were resolved," Plaintiff contends that he is unable to perform these occupations, necessitating a remand to resolve this discrepancy. [*Id.* at 15–18.] The Court disagrees.

---

[5] The Court is also unpersuaded by Plaintiff's argument that his RFC somehow falls in the middle ground between sedentary and light work, requiring resolution on remand. [Pl.'s Br. at 14.] The ALJ's RFC determination is consistent with unskilled light work. *See* 20 CFR § 416.967(b).

At the hearing, Plaintiff testified that his doctor, at an unspecified time in 2021, diagnosed him with "a white cataract with anterior capsular fibrosis in the right eye" and "told" Plaintiff that he could not drive as a result. [R. at 49–50.] Plaintiff further testified that he is "completely blind" in his right eye, noting that if he "got to pour something in a glass, I have to be really careful because my depth – like I'm constantly spilling things on the counter, like pouring things, you know, thinking its going in a cup." [*Id.*] Plaintiff also testified that he has a cataract in his left eye, but that he "can see through it still", albeit "nearsighted." [*Id.* at 50–51.] The ALJ noted this testimony in her opinion, [*id.* at 21], but, "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision", [*id.* at 22]; *see also* [*id.* at 25 ("In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant.").] In assessing the objective medical evidence, the ALJ notably opined "[a]s to the claimant's cataract" as follows:

> [T]he claimant's vision during his examination with Dr. Oxenberg was not consistent with his examination with an ophthalmologist 8 days prior to his evaluation with Dr. Oxenberg. On September 7, 2021, the claimant exhibited visual acuity with correction at 20/70 on the right and 20/20 on the left. His vision was reduced on the right due to his cataract but he wanted to wait for surgery suggesting that surgery would have been recommended in 2021. The claimant underwent no evaluation in 2022 for his cataract and did not return for another cataract examination until 2 years after his September 7, 2021 evaluation. At that time, he was no longer a candidate for an anterior capsulotomy and he was referred for a pars plana lensectomy. At that time, his visual acuity was hand motion on the right and 20/70 on the left. The

undersigned assigned environmental limitations and a limitation from driving
to consider his cataract.

[*Id.* at 26.]

Thus, contrary to Plaintiff's alleged detrimentally-impaired farsightedness or otherwise complete blindness in his right eye, *see* [Pl.'s Br. at 11–18; Pl.'s Reply Br. at 1–4], the ALJ determined that "the objective medical evidence fail[ed] to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the claimant's residual functional capacity as assigned", [R. at 26]. There was no failure on the ALJ's part to "resolve[ ]" the issue of his cataract in light of the objective medical evidence, as Plaintiff avers. Based on the finding above, the ALJ limited the RFC by prohibiting Plaintiff from concentrated exposure to "hazards such as heights and moving machinery" and "[n]o[t] driving a motor vehicle." [*Id.* at 21, 26.]

The ALJ properly considered the objective medical evidence with respect to Plaintiff's cataract and fashioned an RFC limitation to account for it. That determination is supported by "substantial evidence," and the Court detects no inconsistencies between the RFC and the ALJ's hypothetical posed to the VE.[6] This Court is not tasked with reweighing the evidence in Plaintiff's favor; that lies within the original purview of the ALJ. *See J.M.*, 2025 WL 3312259, at *7. All this Court must determine is whether the ALJ's decision is supported by "substantial evidence," "a low bar". *Michelle S. v. Comm'r of Soc. Sec.*, No. CV 24-9721 (GC), 2025 WL 2717806, at *5 (D.N.J. Sept. 24, 2025) (citing *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004)). Such is the case here. Remand is consequently unnecessary.

---

[6] Consequently, any (unelaborated) reliance by Plaintiff on SSR 83-14 or 85-15, to the extent they are even instantly applicable, is unavailing. *See* [Pl.'s Br. at 13.]

## V.    CONCLUSION

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**.  An accompanying

Order shall issue.


**January 23, 2026**                          **/s/Renée Marie Bumb**
Date                                          RENÉE MARIE BUMB
                                              Chief United States District Judge

17